IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

TODD A. ROUGHT,

                Petitioner,

        v.

DAVID STALLONE, Superintendent,
Cayuga Correctional Facility,

             Respondent.

No. 9:12-cv-00622-JKS

MEMORANDUM DECISION

Todd A. Rought, a New York state prisoner proceeding *pro se*, filed a Petition and
Supplemental Petition for Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.
Rought is in the custody of the New York State Department of Corrections and Community
Supervision and is incarcerated at Cayuga Correctional Facility. Respondent has answered and
Rought has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

Rought was charged by indictment with two counts of sexual conduct against a child in
the first degree, one count of rape in the second degree, and two counts of endangering the
welfare of a child. Rought initially pled not guilty and rejected a plea offer. He later pled guilty
and was sentenced to an aggregate term of eight years' imprisonment followed by twenty years
of post-release supervision.

Through counsel, Rought directly appealed, arguing that: 1) his guilty plea was not
knowing, voluntary, or intelligent where the Pre-sentence Investigation Report ("PSR") and
sentencing memorandum "revealed [Rought's] limited mental competence"; 2) the court failed to

hold a competency hearing prior to accepting Rought's guilty plea; 3) the plea colloquy was insufficient to put Rought on notice that he could be subject as a sex offender to indefinite civil confinement pursuant to the Sex Offender Management and Treatment Act ("SOMTA") after serving his prison term; 4) the court failed to place on the record its ruling denying Rought's motion to inspect the grand jury minutes, and, "adding to the inequity," the court relied on the grand jury minuted during sentencing; 5) his sentence was harsh and excessive considering Rought's "limited ability to learn and understand."

The Appellate Division affirmed Rought's conviction, first holding that his claims that his plea was not knowing, voluntary and intelligent due to his mental incompetence and that the trial court erred in accepting his plea without a competency hearing were not preserved for review because Rought failed to move to withdraw his plea or vacate the judgment of conviction. The Appellate Division held that, moreover, Rought did not make any statements during the plea allocution that would negate an essential element of the crime or otherwise cast doubt on his guilt, which would have triggered a narrow exception to the state law preservation requirement. The court held that, in any event, there was no evidence in the record indicating that Rought lacked the capacity to enter a knowing, intelligent and voluntary plea because he participated in the plea allocution, gave coherent responses to the trial court's questions, confirmed that he understood the proceedings and the ramifications of his plea.

The Appellate Division likewise denied Rought's claim that the plea colloquy was insufficient to put him on notice of potential confinement under SOMTA, noting that the court had advised him of the risk of continuing confinement, and Rought represented that he had reviewed the matter with counsel. Lastly, the Appellate Division was unpersuaded by Rought's

claim that his sentence was harsh and excessive considering the serious nature of his offenses and that Rought received the bargained-for sentence.

Through counsel, Rought filed for leave to appeal to the Court of Appeals, raising the following claims: 1) his plea was not knowingly, voluntarily and intelligently entered because he has "limited mental capabilities" and the trial court "failed to elicit more than 'yes' or 'no' responses" during the plea colloquy; and 2) the guilty plea was involuntary because the court failed to advise Rought that he could potentially be subject to indefinite confinement under SOMTA.  Rought additionally filed a *pro se* leave application, in which he raised four claims: 1) although he was charged with sexual offenses, his DNA was never tested; 2) the court erred in denying an unidentified motion; 3) the prosecution withheld unidentified exculpatory materials; 4) his plea was involuntary because he has a "mental disability of some kind," primarily deafness in his right ear, and that he simply said "yes" or "no" in response to the court's questions because he was ashamed to state that he could not hear or understand what was transpiring; and 5) the court improperly relied on the PSR during sentencing.  The Court of Appeals summarily denied leave to appeal.

Rought originally timely filed a petition under 28 U.S.C. § 2241.  This Court ordered Rought to respond as to whether he consented to having his petition converted to one brought pursuant to 28 U.S.C. § 2254.  Rought consented by letter, and this Court converted the petition. Rought then filed with this Court a petition under 28 U.S.C. § 2254, which this Court construed as a supplemental petition rather than an amended petition.

## II. ISSUES RAISED

Rought raises the following claims in his Petition and Supplemental Petition before this Court: 1) his plea was not knowingly, voluntarily, and intelligently entered because the trial court

failed to elicit more than a "yes" or "no" response during the plea colloquy in light of his "limited mental competence, [his] limited education [and] potential learning disebility [sic], largely untreated alcoholism[,] physical difficulties, including deafness in one ear," and the fact that he was on "mental healt[h] medication" at the time of the plea hearing; 2) the court should have held a competency hearing prior to accepting his plea; 3) the plea colloquy was insufficient to put him on notice of the potential confinement he faces under SOMTA; 4) the trial court failed to put its ruling denying defense counsel's motion to inspect the grand jury minutes on the record and then improperly relied on the grand jury minutes in sentencing; 5) his sentence was harsh and excessive due to his "lack of felony offense history"; 6) the prosecution withheld unidentified *Brady*[1] and *Rosario*[2] materials and also withheld medical records from the grand jury "that would show that the statements giving [sic] by the victim's [sic] and other witnesses, are not true"; 7) counsel was ineffective for failing to inform the court at the time of the plea hearing that Rought was on "medication for mental healt[h] disability," that he had been evaluated by a drug and alcohol counselor, and that he was deaf in his right ear which made it hard for him to understand the proceeding; and 8) various "[p]rocedures" violate his due process

---

[1]     *Brady v. Maryland*, 373 U.S. 83 (1963).

[2]     *People v. Rosario*, 173 N.E.2d 881 (N.Y. 1961)

rights, the New York Constitution, the United State Constitution, and New York State Criminal

Procedure Law.


### III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding,"

§ 2254(d)(2). A state-court decision is "contrary" to federal law "if the state court applies a rule

that contradicts the governing law set forth" in controlling Supreme Court authority or "if the

state court confronts a set of facts that are materially indistinguishable from a decision" of the

Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362,

406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1)

"refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the

relevant state-court decision," *Williams*, 529 U.S. at 412, and not circuit precedent, *see Renico v.

Lett*, 130 S. Ct. 1855, 1865-66 (2010). The holding must also be intended to be binding upon the

states; that is, the decision must be based upon constitutional grounds and not on the supervisory

power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Thus,

where holdings of the Supreme Court regarding the issue presented on habeas review are

lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established

-5-

Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted). In applying these standards in habeas review, this Court reviews this "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.    *Exhaustion*

Respondent correctly contends that a number of Rought's claims are unexhausted. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). Exhaustion of state remedies requires the petitioner to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365-66. An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used. *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005).

Rought has exhausted his claim that his plea colloquy was insufficient to place him on notice of potential civil confinement under SOMTA. He raised this claim on direct appeal, citing relevant constitutional authority. He also raised this claim in his application for leave to appeal to the Court of Appeals. Respondent concedes that Rought's claim that his plea was involuntary is exhausted, and Respondent appears to have included Rought's competency

argument within that claim. Although Rought presented his involuntary plea and competency claims in state-law terms and failed to raise his competency claim in his letter application for leave to appeal to the Court of Appeals, Respondent concedes that these claims may be deemed exhausted because they are "within the mainstream of federal constitutional litigation." *See Daye v. Attorney Gen.*, 696 F.2d 186, 194 (2d Cir. 1982).

Rought failed to exhaust his claim that his sentence was harsh and excessive. Although he did raise this claim in his brief to the Appellate Division, he did so solely on state-law grounds. Rought failed to bring this claim in his application letter for leave to appeal to the Court of Appeals. *See Smith v. Duncan*, 411 F.3d 340, 345 (2d Cir. 2005) (federal habeas court assumes for exhaustion purposes "that the Court of Appeals would construe a petitioner's leave application as abandoning claims that the petitioner had pressed to the Appellate Division below where those claims were not presented to the New York high court of review" (citation and internal quotation marks omitted)); *Grey v. Hoke*, 933 F.2d 117, 119 (1991) (petitioner failed to exhaust claims for purposes of federal habeas review where the claims were not presented in his letter application to the Court of Appeals, even though petitioner attached his brief to the Appellate Division which did raise the claims at issue). Rought argued in his brief to the Appellate Division that the trial court failed to place on the record its denial of a motion to inspect the grand jury minutes and then improperly relied on them in sentencing, but presented his claims solely on state-law grounds. Moreover, Rought claimed in his *pro se* application for leave to appeal to the Court of Appeals that the trial court erred in relying on the PSR in sentencing, but did not raise his claims regarding the grand jury minutes. Accordingly, this claim is also unexhausted. *See Duncan*, 411 F.3d at 345; *Hoke*, 933 F.2d at 119. Rought also

brought his claim that certain "procedures" violated the New York and United States Constitutions and that the prosecution withheld certain material for the first time in his Petitions before this Court. These claims are therefore unexhausted. *See Hoke*, 933 F.2d at 119. Lastly, Rought raised his claim that counsel was ineffective for failing to advise the court that he was on medication at the time he entered his plea the first time in his Petitions before this Court, and it is therefore also unexhausted. *See id.*

"[W]hen a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008); *see also Grey*, 933 F.2d at 121. A habeas petitioner may only avoid dismissal of his procedurally defaulted claims if he can demonstrate "cause for the default and prejudice from the asserted error," *House v. Bell*, 547 U.S. 518, 536 (2006), or a "fundamental miscarriage of justice," *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). A miscarriage of justice is satisfied by a showing of actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). Rought does not claim that cause exists for his procedural default, nor does he assert actual innocence. Because Rought may not now return to state court to exhaust these claims, the claims may be deemed exhausted but procedurally defaulted from habeas review. *See Ramirez v. Att'y Gen.*, 280 F.3d 87, 94 (2d Cir. 2001).

Rought's unexhausted claim that trial counsel was ineffective is not barred, however, because there is no time limit or number bar in filing writ of error coram nobis applications. *See Smith v. Duncan*, 411 F.3d 340, 347 n.6 (2d Cir. 2005); *Turner v. Sabourin*, 217 F.R.D. 136, 147

(E.D.N.Y. 2003).  Rought may therefore still exhaust this claim in state court.  This Court could stay the Petition and allow Rought to return to state court to satisfy the exhaustion requirement as to this unexhausted claim.  *See Zarvela v. Artuz*, 254 F.3d 374, 380-83 (2d Cir. 2001).  However, Rought has not requested that this Court stay and hold his petition in abeyance.  Moreover, the Supreme Court has held that it is an abuse of discretion to stay a mixed petition pending exhaustion where: 1) the petitioner has not shown good cause for failing to exhaust all available state court remedies; and 2) the unexhausted claim is "plainly meritless."  *Rhines v. Weber*, 544 U.S. 269, 277 (2005).  In his Petitions, Rought provides no reason why he did not seek relief on this claim through a coram nobis application to the state court.

Despite Rought's failure to exhaust a number of his claims, this Court nonetheless may deny his claims on the merits and with prejudice.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  This is particularly true where the grounds raised are meritless.  *See Rhines*, 544 U.S. at 277.  Accordingly, this Court declines to dismiss the unexhausted claims solely on exhaustion grounds and will instead reach the merits of the claims as discussed below.

B.      *Merits*

        1. Claims related to Rought's plea hearing and acceptance (claims 1, 2, 3 & 7)

        First, Rought argues that the court erred in failing to conduct a competency hearing prior to accepting his guilty plea.  He also argues that his plea was involuntary because the court erred in failing to elicit more than a "yes" or "no" response from him during the plea colloquy in light of his "limited mental competence, [his] limited education [and] potential learning disebility

[sic], largely untreated alcoholism[,] physical difficulties, including deafness in one ear," and the fact that he was on "mental healt[h] medication" at the time of the plea hearing. He further argues that his plea was involuntary because the plea colloquy failed to put him on notice of his potential indefinite civil confinement under SOMTA. Rought additionally argues that trial counsel was ineffective for failing to inform the court at the time of the plea hearing that Rought was on "medication for mental healt[h] disability," that he had been evaluated by a drug and alcohol counselor, and that he was deaf in his right ear which made it hard for him to understand the proceeding.

At the plea hearing, the court questioned Rought as follows:

| | |
|---|---|
| THE COURT: | All right. Mr. Rought, your attorney tells me you want to enter a plea of guilty to each count of [the indictment] with the understanding, sir, that I would cap the sentence . . . at eight years within the New York State Department of Correctional Services and that I could impose—or I would impose a term of post-release supervision, but that term would not exceed 20 years.<br><br>With that understanding, sir, is it your desire to enter a plea of guilty to that indictment?<br><br>(Whereupon, a discussion off the record then occurred.) |
| [ROUGHT]: | Yes, sir. |
| THE COURT: | All right. Now, other than that sentence that was just discussed, Mr. Rought, has anybody promised you anything else to get you to plead guilty, sir? |
| [ROUGHT]: | No. |
| THE COURT: | Has anybody forced you, coerced you or threatened you in any way in order to get you to plead guilty? |
| [ROUGHT]: | No, sir. |

| | |
|---|---|
| THE COURT: | Are you pleading guilty freely and voluntarily because this is what you want to do after speaking with your lawyer? |
| [ROUGHT]: | Yes, sir. |
| THE COURT: | Now, Mr. Rought when you plead guilty, you give up certain rights, sir.  You give up your right to a trial.  You give up your right that would require the prosecution prove your guilt beyond a reasonable doubt.  You give up your right to testify in your own behalf, to call witnesses on your behalf and to cross-examine the People's witnesses.<br><br>But if you plead guilty, Mr. Rought, you give up those rights and you give them up forever.<br><br>Do you understand that, sir? |
| [ROUGHT]: | Yes, sir. |
| THE COURT: | Do you also understand, Mr. Rought, by pleading guilty, that means the same thing, it has the same force and effect as if you actually went to trial and you were convicted of the crime or crimes that you're pleading guilty to?<br><br>Do you understand that, sir? |
| [ROUGHT]: | Yes, sir. |
| THE COURT: | [Defense counsel], have you had an opportunity to go over the potential civil confinement with your client? |
| [DEFENSE COUNSEL]: | I have discussed that with him, yes, Judge, as well as the Megan's Law implications. |
| THE COURT: | All right.  Mr. Rought, as some point in time when you near the conclusion of your sentence of imprisonment with the New York State Department of Correctional Services, you're going to be evaluated at that point in time, and there may, in fact, be court proceedings to determine, first, whether you suffer from a, what's called a mental abnormality that predisposes you to engage in illegal sexual conduct that results in your having serious difficulty in controlling that conduct.  And, also, sir, you would be evaluated to determine if you do suffer from such mental abnormality, whether that mental abnormality is so serious that it makes it likely that you will again commit a sex |

offense and, therefore, be classified [as a] dangerous sex offender requiring confinement.

Now, if you're found to have a mental abnormality, you will be subjected to strict and intensive supervision and if you're found to have a mental abnormality which makes you a dangerous sex offender requiring confinement, sir, you will be confined to a treatment facility until such time as you are found not to be a dangerous sex offender requiring confinement.

Do you understand that, sir?

[ROUGHT]:                              Yes, sir.

THE COURT:                           And you've reviewed that with your attorney, is that right?

[ROUGHT]:                              Yes, sir.

The court did not ask Rought if he was on any medications which might affect his ability to understand the proceedings and the ramifications of pleading guilty, or any other questions probing into Rought's competence.

Rought then admitted to each count of the indictment. The court adjourned so that it could review the PSR, defense counsel could file a sentencing memorandum, and the prosecution could determine if the victims wished to be present for sentencing.

Defense counsel filed a sentencing memorandum arguing that the court should impose a sentence less than the eight-year agreed-upon cap and that the court should impose post-release supervision closer to the minimum than the maximum. Defense counsel urged the court to consider Rought's personal circumstances, including the fact that he dropped out of school in the eighth grade, he was placed in a detention center for runaways at age fifteen, there was some indication that he might be learning disabled, "a number of family members have encountered legal problems, and the family picture is a grim one." Defense counsel further noted that Rought's left leg was permanently damaged as a result of a job-related accident, he suffered

from chronic obstructive pulmonary disease requiring regular use of an inhaler, he had undergone spinal surgery in the past and suffers from neck and back difficulties, he was deaf in his right ear, and that together these physical problems "have made gainful employment difficult given his lack of education." Defense counsel additionally noted that Rought had a significant and largely untreated history of alcohol abuse. Defense counsel argued that, taking these and other factors into account, a sentence closer to five years' imprisonment would be appropriate and that a long period of post-release supervision was not warranted. Notably, defense counsel did not raise any issues concerning Rought's mental health.

At sentencing, the trial court indicated that it had received and reviewed both the sentencing memorandum and the PSR. Defense again argued for a lenient sentence in light of Rought's "educational difficulties, his physical difficulties, his lack of significant criminal history as an adult and particularly his lack of any history of sex offenses as an adult." The court offered Rought an opportunity to address the court, at which time he stated as follows:

> I know I did wrong. The two girls I would like to tell them I'm sorry myself but they're not here. I mean I know sorry ain't going to take back the pain that I caused and I'm doing the best I can to make sure it never happens again.

The court commented that "the pain that . . . will last with these individuals is going to take virtually a life time to recover from and hopefully with treatment they will be able to recover. But the conduct as is set forth in the grand jury testimony and the presentence report is both very significant and very disturbing." The court then sentenced Rought to an aggregate prison term of eight years followed by twenty years of post-release supervision.

On direct appeal, Rought argued through counsel that the trial court failed to review the PSR prior to accepting Rought's plea. The PSR is not part of the record before this court, but

according to Rought, the report stated that Rought only completed school through the eighth grade, that he was a "special ed" student who "learned slowly," that he had been abused by his mother as a child and was in foster care until he was eight, and that he ran away from his father's home at age 15 and was placed in a detention center. Rought further stated in his direct appeal that no psychiatric report was requested by counsel or ordered by the court, and that the verification section of the PSR indicates a check mark of "no" in the verification of "mental health" box. Rought argued that based on the facts set forth in the PSR as well as Rought's "limited responses" during the plea colloquy and sentencing, "there was reason to doubt Mr. Rought's competency and whether he had the capacity to understand the proceedings against him."

The Appellate Division denied Rought relief on these claims, except for the ineffective assistance of counsel claim which was not before the court. The Appellate Division first concluded that Rought had failed to move to withdraw his plea or vacate the judgment of conviction and accordingly his claims that his plea was not entered knowingly, voluntarily and intelligently due to his mental incompetence, and that the court erred in failing to hold a competency hearing, were not preserved for appellate review. The court further held that Rought failed to trigger the narrow exception to the state-law preservation requirement because, contrary to his assertion, he did not make any statements during the plea allocution that negated an essential element of the crimes or otherwise cast doubt on his guilt. The court held in the alternative as follows:

> [T]here is no evidence in the record that defendant lacked the capacity to enter a knowing, voluntary and intelligent plea. He participated in his plea allocution, gave coherent responses to the County Court's questions and confirmed that he understood the proceedings and the ramifications of his guilty plea. Accordingly, were this issue

properly before us, we would find no abuse of discretion in the court's acceptance of defendant's plea without holding a competency hearing.

[Rought] further contends that the plea colloquy was insufficient due to the failure to advise him that his potential confinement pursuant to the [SOMTA] was of an indefinite duration.  However, and as counsel notes, County Court explicitly informed [Rought] of the evaluation that would be performed and the risk of continuing civil confinement, defense counsel stated that he had discussed this possibility with [Rought], and [Rought] confirmed that he had reviewed the matter with counsel.  Accordingly, we do not find the plea involuntary on this ground.

Rought states in his Petitions before this Court that he was on "Benztropire Cogentin and Halcol" and/or "Halelol" at the time he pled guilty.  Rought appears to be referring to "Benztropine," which is marketed under the trade name "Cogentin," and is used in the treatment of Parkinson's disease and involuntary movements due to the side effects of certain psychiatric drugs.  Rought's claim that he was on "Halcol" or "Halelol'" might be a reference to "Haldol," which is a brand name of "Haloperidol," and is used to treat certain mood disorders such as schizophrenia.  He does not identify what mental conditions he is being treated for or how the medications might impair him.

After filing his Petition with this Court, Rought filed a letter motion requesting assistance in locating "mental health records" from several correctional facilities.  This Court denied Rought's request without prejudice and ordered the Respondent to provide all records relevant to the Petition.  This Court noted that the parties would be notified if the Court required further information.  Rought then filed a "statement of facts" regarding his alleged mental disability, stating that he was not wanted by his mother, his mother abused him when he was a baby, and he went "from home to home."  Rought further added that he suffered great "mental stress" after his best friend died and after he witnessed a plane crash where he came upon a man whose legs had both been cut off and who was "burning alive."  Rought stated that after he was arrested he told

-15-

the investigator "to put his gun to [Rought's] head and kill [him]."  Rought claimed he was then

put on suicide watch and was prescribed the two medications mentioned above.  Rought also

claimed that he was deaf in his right ear and could not understand or comprehend the

consequences of pleading guilty.

Rought then filed a second letter motion requesting an order to produce his mental

records from various correctional facilities, stating that these records would show that he was

"heavily medicated and unable to understand fully the plea that [he] entered."  This Court again

denied Rought's request.  After filing his Traverse, Rought filed another letter with this Court

detailing his inability to obtain his mental health records and asking for a response from this

Court.  This Court again denied Rought's request.

As Respondent notes, Rought's claim that his plea was not knowingly, voluntarily, and

intelligently entered is procedurally barred from review because the Appellate Division relied on

an independent and adequate state ground in dismissing these claims.  *See Coleman v.*

*Thompson*, 501 U.S. 722, 729 (1991) (federal courts "will not review a question of federal law

decided by a state court if the decision of that court rests on a state law ground that is

independent of the federal question and adequate to support the judgment").  Where a state-court

holding contains a plain statement that a claim is procedurally barred, the federal habeas court

may not review it, even if, as here, the state court also rejected the claim on the merits in the

alternative.  *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (explaining that "a state court

need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it

explicitly invokes a state procedural rule as a separate basis for its decision"); *Velasquez v.*

*Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990).  The New York procedural rule applied by the Appellate

Division—that a challenge to the sufficiency or voluntariness of a guilty plea must be preserved by moving to withdraw the plea or vacate the judgment—has been recognized as an independent and adequate ground for dismissal. *See, e.g.*, *Crumpler v. Khahaifa*, No. 10-CV-0819, 2011 WL 6409221, at *7 (W.D.N.Y. Dec. 21, 2011); *Garcia v. Boucaud*, No. 09 Civ. 5758, 2011 WL 1794626, at *3 (S.D.N.Y. May 11, 2011); *Escalante v. Smith*, 9:06-cv-1506, at *6 (N.D.N.Y. May 18, 2009). It does not appear, however, that the invocation of a state procedural bar precludes this Court from reviewing Rought's competency claim on the merits. *See Silverstein v. Henderson*, 706 F.2d 361, 367-68 (2d Cir. 1983) (prisoner's failure to object or challenge his competency to stand trial on direct appeal did not constitute a waiver of his rights and an independent and adequate state ground immune from attack on federal habeas review).

To avoid a procedural bar, a petitioner must demonstrate either cause for the default and actual prejudice, or that the failure to consider the claims will result in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted. *Coleman*, 501 U.S. at 749-50 (citing *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)); *Dunham v. Travis*, 313 F.3d 724, 729 (2d Cir. 2002). "'Actual innocence' means factual innocence, not mere legal insufficiency." *Dunham*, 313 F.3d at 730 (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal brackets omitted). Rought has not alleged cause or prejudice.

In any event, Rought's claims are without merit. "A criminal defendant may not be tried unless he is competent, and he may not waive his right to counsel or plead guilty unless he does so 'competently and intelligently.'" *Godinez v. Moran*, 509 U.S. 389, 398 (1993). The standard for determining competency to stand trial and competency to plead guilty are the same. *Id*. at 399. The determination turns on whether the defendant has "sufficient present ability to consult

with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *Id.* at 396 (citation omitted).

The Due Process Clause does not require a competency hearing in every case; a hearing is required only if the court has "reasonable cause" to believe that the defendant has a mental defect rendering him incompetent. *United States v. Nichols*, 56 F.3d 403, 414 (2d Cir. 1995); *see Pate v. Robinson*, 383 U.S. 375-76 (1966) (holding that the failure of a trial court to hold a competency hearing *sue sponte* may violate due process if there is sufficient evidence to cast doubt upon a defendant's competency). There are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed." *Silverstein*, 706 F.2d at 369 (quoting *Drope v. Missouri*, 420 U.S. 162, 180 (1975)). "Reviewing courts should consider the indicia of incompetence that were before the trial judge, which may include a defendant's history of erratic or irrational behavior, bizarre courtroom conduct, defense counsel's expression of doubt about the client's competence, or medical reports. *Smith v. Rock*, 554 F. Supp. 2d 505, 519 (S.D.N.Y. 2008) (citations omitted).

Even accepting as true all of Rought's contentions—that he was deaf in one ear, that he suffered from untreated alcoholism, that he had an eighth grade education and a potential learning disability, that his mother abused him as a child and that he suffered from various physical ailments—the Appellate Division's conclusion that the trial court did not abuse its discretion in failing to hold a competency hearing was not unreasonable or contrary to federal law. As the Appellate Division noted, Rought gave coherent and clear responses to the court's questioning during the plea allocution. During that allocution, he confirmed that he had discussed the plea with his attorney, that he understood he was giving up certain rights, and also

that he understood that he was subject to eight years' imprisonment and potential continuing confinement under SOMTA. Rought took responsibility for his actions, stating in open court that what he had done was "wrong," and that he was sorry for his actions and wished he could take back the pain he had caused. Defense counsel did not express doubt about Rought's competence, no psychiatric reports were requested, and Rought did not exhibit any bizarre or irrational behavior which might have alerted the court to the possibility that Rought could not understand the proceedings or rationally aid in his own defense.

There is the concern, however, that Rought was on medication which might have affected his ability to understand the proceedings. Defense counsel raised a host of medical issues it its sentencing memorandum advocating for a lenient sentence, but did not alert the court that Rought suffered from mental illness and might have been on medication that affected his ability to understand the ramifications of his guilty plea. As mentioned above, Rought has since stated that he is on mental health medications and was on them at the time he entered his plea, but has not stated what he is being treated for or how his alleged mental health conditions and medication affected his ability to understand the nature of the proceedings and assist in his own defense. Even assuming he was being treated for mental health issues, however, "[i]t is well-established that some degree of mental illness cannot be equated with incompetence to stand trial." *Nichols*, 56 F.3d at 412 (concluding that the fact that five of six psychiatric reports indicated evidence of paranoia or paranoid delusions, and that two indicated the possible onset of psychosis at certain periods, did not undermine the court's finding of competency) (citation omitted). Rather, "[t]he mental illness must deprive the defendant of the ability to consult with his lawyer . . . and to understand the proceedings against him rationally as well as factually." *Id.*

Here, there are no indications, other than Rought's own assertions, that he could not understand the proceedings or assist in his own defense. The Supreme Court has not held that a state court must specifically inquire into a defendant's history of mental illness or medication regiment to satisfy due process requirements in accepting a plea. *See Musumeci v. NYS Dep't of Corr.*, No. 07-CV-6384, 2010 WL 2287486, at *4 (W.D.N.Y. June 1, 2010) at *4; *Royster v. Perez,* No. 08 CV 131, 2009 WL 1505278, *4 (E.D.N.Y. May 28, 2009) (rejecting challenge to validity of guilty plea based on trial court's failure to inquire into history of mental illness and the medications taken by petitioner).

Lastly, defense counsel's failure to alert the court that Rought was on mental health medications and was deaf in one ear did not prejudice Rought where there were no indications that these medications or his deafness might have affected his competency. *See Lockhart v. Fretwell*, 506 U.S. 364, 374 (1993) (O'Connor, J., concurring) (failing to raise a meritless objection cannot constitute prejudice under a *Strickland* ineffective assistance of counsel claim); *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (holding that it is not ineffective counsel to fail to raise meritless claims).

"In addition to determining that a defendant who seeks to plead guilty or waive counsel is competent, a trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary." *Godinez*, 509 U.S. at 400. "A plea of guilty is considered voluntary and intelligent if the defendant enters the plea with full awareness of its 'direct consequences.'" *Id.* (quoting *Brady v. United States*, 397 U.S. 742, 755 (1970)). However, "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral

proceedings. Solemn declarations in open court carry a strong presumption of verity."

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also Adames v. United States*, 171 F.3d

728, 732 (2d Cir. 1999) (a criminal defendant's self-inculpatory statements made under oath at

his plea allocution are generally treated as conclusive in the face of defendant's later attempt to

contradict them). Therefore, "[t]he subsequent presentation of conclusory allegations

unsupported by specifics is subject to summary dismissal, as are contentions that in the face of

the record are wholly incredible." *Blackledge*, 431 U.S. at 74.

Here, Rought stated under oath that no one had promised him anything or coerced or

threatened him into pleading guilty. He answered affirmatively when asked if he was pleading

guilty voluntarily after consulting with his attorney, that by pleading guilty he was giving up

certain rights, including the right to a trial, and that he understood that pleading guilty would

have the same force and effect as being found guilty after a trial. Further, contrary to Rought's

assertions, defense counsel stated that he had discussed with Rought the possibility of civil

confinement under SOMTA, the court extensively advised Rought of the effects of SOMTA,

including that Rought might be subjected to confinement "until such time as [he is] not found to

be a dangerous sex offender requiring confinement," and Rought acknowledged that he

understood this possibility and that he had reviewed the application of SOMTA with his

attorney.

Additionally, Rought's specific reasons for claiming that his plea was involuntary are

without merit. First, although other than Rought's statement to the court in which he

acknowleged that his actions were "wrong," Rought responded to the court's questions with

"yes" and "no" answers, the court was permitted to rely on these answers in determining whether

to accept his guilty plea. *See United States v. Torrellas*, 455 F.3d 96, 103 (2d Cir. 2006) ("There is no requirement that in order to rely on a defendant's answer in a guilty-plea colloquy to conclude that the defendant pleaded guilty knowingly and voluntarily, those answers must be lengthy and all-encompassing; a straightforward and simple 'Yes, your Honor' is sufficient to bind a defendant to its consequences." (citation and internal brackets omitted)); *Lebron v. Sanders*, No. 02 Civ. 6327, 2008 WL 793590, at *14 (S.D.N.Y. Mar. 25, 2008) (finding no merit to petitioner's claim that his plea was involuntary where he gave "yes" or "no" answers during his allocution where petitioner allocuted to each of the crimes charged and acknowledged that he committed each one). Second, Rought offers no evidence that his alleged deafness in one ear prevented him from understanding the proceedings. From the record it appears that he answered the court's questions appropriately and without difficulty. *See Lear v. Poole*, 711 F. Supp. 2d 288, 296 (W.D.N.Y. 2010) (petitioner's "in-court, under-oath statements . . . completely undermine his contention that he was too disoriented to [have] understood what occurred at the plea hearing"). Moreover, many of the ailments cited to by Rought, including chronic obstructive pulmonary disease, an injured left leg, and recurring neck and back pain, are all unrelated to his cognitive capacity. Neither Rought nor his counsel on direct appeal attempted to explain how these ailments limited his competence or the voluntariness of his plea. Accordingly, Rought is not entitled to relief on these interrelated claims.

### 2. Claim 4: Grand jury minutes

Rought next argues that the trial court failed to put its ruling denying defense counsel's motion to inspect the grand jury minutes on the record and then improperly relied on the grand jury minutes in sentencing.

Rought's claim that the court failed to put its ruling on the record denying defense counsel's motion to inspect the grand jury minutes is without merit. First, Rought's claim is waived by the entry of his guilty plea. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Second, the court did in fact put its ruling on the record. Through an omnibus motion, Rought requested an order directing the prosecution to produce the grand jury minutes for inspection, seeking a reduction or dismissal of the counts against him based on those minutes. The court denied the request, concluding on the record that the evidence as submitted to the grand jury was sufficient to establish the commission of the offenses charged or the lesser included offenses thereof, the legal instructions given were sufficient, fair and accurate, the presentation was legal and proper, and there were no defects warranting dismissal or reduction of the charges.

Rought's claim that the court erred in relying on the grand jury minutes in sentencing is likewise without merit. At sentencing, the court stated that "in reviewing the [PSR] and the grand jury testimony the conduct complained of here was significant and over an extended period of time. That's particularly troubling for me." The court later again stated that the conduct as set forth in the PSR and grand jury minutes was "troubling." Rought does not cite any case law in support of his claim, but references his Appellate Division brief in which he merely claimed that it was an "inequity" to deny Rought's motion to review the grand jury minutes and yet rely on the minutes in sentencing. Rought's claim is not cognizable on habeas review because he fails to assert that the decision of the Appellate Court denying relief was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

### 3. Claim 5: Harsh and excessive sentence

Rought next argues that his sentence was harsh and excessive due to his "lack of felony offense history."  The Appellate Division denied Rought relief, concluding that he "received the bargained-for sentence, and considering the serious nature of the present offenses," found no abuse of the trial court's discretion or extraordinary circumstances warranting a modification of the sentence in the interests of justice.

Rought fails to assert a cognizable claim for federal habeas corpus relief.  Rought makes no claim that his sentence violates the Constitution, laws, or treaties of the United States.  *See Estelle*, 502 U.S. at 68.  The Appellate Division's decision to decline to reduce his sentence as harsh and excessive is a matter of state law not reviewable by this Court.  *Id.* at 67-68 ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  Accordingly, Rought is not entitled to relief on this claim.

### 4. Claim 6: Exculpatory material

Rought next argues that the prosecution withheld unidentified *Brady* and *Rosario* materials, and also withheld medical records from the grand jury "that would show that the statements giving [sic] by the victim's [sic] and other witnesses, are not true."  As mentioned above, Rought brings this claim for the first time in his Petitions before this Court.

In his omnibus motion, Rought requested an order directing the prosecution to produce all *Brady* and *Rosario* material.  In response, the People represented that they were aware of their

obligation to provide Rought with any *Brady* evidence, and that Rought had been provided with a copy of the police reports and witness statements. The People also represented that, as required by New York Law, they would provide Rought with "all written or recorded statements, including any testimony before the Grand Jury, made by any persons whom the People intend to call as witnesses at trial and which relate to the subject matter of the witness' testimony" after the jury was sworn.

As an initial matter, "there is no general constitutional right to discovery in a criminal case, and *Brady*, which addressed only exculpatory evidence, did not create one." *Gray v. Netherland*, 518 U.S. 152, 168 (1996) (citation, internal quotation marks and brackets omitted). The Due Process Clause has "little to say regarding the amount of discovery which the parties must be afforded." *Id.* (citation omitted). To the extent Rought's *Brady* claim involves impeachment evidence, it is foreclosed by his guilty plea. *See United States v. Ruiz*, 536 U.S. 622, 633 (2002) ("the Constitution does not require the government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant"). To the extent that Rought claims that exculpatory evidence was withheld, "the law is unsettled as to whether such evidence must be disclosed prior to entry of a guilty plea." *Gathers v. New York*, No. 11-CV-1684, 2012 WL 71844, at *9 (E.D.N.Y. Jan. 10, 2012). However, Rought's claim fails because Rought has not identified any exculpatory evidence that the People failed to disclose, and his conclusory assertion that the government failed to turn over exculpatory evidence is insufficient to establish a *Brady* claim. *Id.* (citing cases).

Rought's claim that the People violated their *Rosario* obligation is equally meritless. First, this allegation is not subject to habeas review because *Rosario* claims arise exclusively

under state law.  *Lebron*, at \*21.   In any event, New York Criminal Procedure Law § 240.45, which codified *People v. Rosario*, 173 N.E.2d 881 (N.Y. 1961), *see People v. Perez*, 480 N.E.2d 361, 364 (N.Y. 1985), imposes a duty upon the prosecution to turn over pretrial statements of prosecution witnesses that related to the subject matter of the witnesses' testimony.  That duty, however, only arises after the jury has been sworn and before the prosecution's opening address. N.Y. CRIM. PROC. LAW § 240.45(1)(a).  Rought's *Rosario* claim fails because the prosecution was not required to disclose the materials prior to the swearing in of the jury, and Rought pled guilty, thus waiving his right to a trial.  *See Lebron*, 2008 WL 793590, at \*22.

5. Claim 8: Unconstitutional "procedures"

 Rought lastly argues that "procedures violate [his] due process right's and violate [his] New York State Constitution, United State Constitution under Articlel 1/also CPL."  As "supporting facts," Rought simply states: "New York State Constitution Article 1 sections 1, 2, 3, 4, 5, 6, 11, 12 and 14, Unites State Constitution, 4, 5, 6, 8, and 14 amendments, CPL Articles 190, 200, 210, 600 and other state and federal law."  Respondent did not address this claim in its Answer.

Even construing Rought's claim liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), his claim is incomprehensible and Rought is not entitled to relief.

V. CONCLUSION

Rought is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** Rought's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** this Court issues a Certificate of Appealability only with respect to Rought's interrelated claims that counsel was ineffective for failing to bring to the trial court's attention any issues regarding his competency, that the court should have *sua sponte* held a competency hearing prior to accepting his guilty plea, and that his plea was not knowingly, voluntarily, and intelligently entered due to issues of incompetency. This Court declines to issues a Certificate of Appealability with respect to all other claims. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); Second Circuit R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: January 8, 2014

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge